CRAWFORD LOAN & ABSTRACT CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7681.  Promulgated January 31, 1928.

*Louis B. Montfort, Esq.*, for the petitioner.
*L. C. Mitchell, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: There is presented in this proceeding only the question of the value, for invested capital purposes, of a set of abstract books paid in to the petitioner for stock. It is admitted that the petitioner acquired the books at the time of its organization on March 1, 1912, and that it issued therefor capital stock of the par value of $25,000. Section 326(a)(2) of the Revenue Acts of 1918 and 1921 provides that invested capital means the actual cash value of tangible property paid in for stock at the time so paid in, not to exceed the par value of the stock issued therefor, with exceptions not material here.

The petitioner introduced the testimony of four witnesses, all of whom were familiar with and had intimate knowledge of the books in question, their history, character, use, reliability and value. One of these witnesses, Emile Landmann, was petitioner's only competitor in the abstract business; another, W. H. Powell, was the president of a local bank and had been employed in the bank for many years; another, D. L. Porter, was a real estate and loan broker who had been engaged in that business in the community for many years; and the last, J. T. Montgomery, was a practicing attorney at law and had been so engaged in the community for many years. All these men testified that they had been familiar with petitioner's abstract books for a long period of time and had made use of them. They were residents and business men of long standing in the community and exhibited an intimate knowledge of conditions affecting abstract books in that county. Their businesses were of such a nature as would require them to be informed on matters affecting land titles. One of them testified that he would have paid $25,000 for petitioner's books in 1912, and another testified that he, in association with others, attempted to purchase them in 1912 or 1913 for $25,000 or $30,000. Another of these witnesses testified that he knew of a group of men who were negotiating for the purchase of the books about 1912 and were willing to pay $25,000 for them at that time. All these witnesses testified that, in their opinion, the value of petitioner's books in 1912 was at least $25,000.

We are satisfied that the actual cash value of the abstract books when acquired by the petitioner, March 1, 1912, was $25,000, which amount should be used in the computation of invested capital.

*Judgment will be entered on 15 days' notice, under Rule 50.*